**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

WILLIAM JAMES TRUESDALE,

    Petitioner,

v.                                                                                    Case No. 8:13-cv-3029-T-36MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner William James Truesdale, an inmate in the Florida Department of Corrections proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).  He challenges his conviction entered in 2007 by the Circuit Court for the Sixth Judicial Circuit, Pinellas County.  Respondent has filed a response (Dkt. 13) in which it asserts the petition is untimely.  Truesdale filed a reply.  (Dkt. 17.)  Upon review, the petition must be dismissed as time-barred.

**PROCEDURAL HISTORY**

After his conviction for murder in the second degree, Truesdale was sentenced to life in prison with a twenty-five year minimum mandatory sentence.  (Dkt. 16, Ex. 2.)  Truesdale's judgment and sentence were *per curiam* affirmed, and his motion for rehearing was denied.  (Dkt. 16, Exs. 5, 6, 7.)  The Florida Supreme Court dismissed Truesdale's petition for review, finding it was without jurisdiction.  (Dkt. 16, Ex. 10.)

Truesdale filed another notice of appeal with respect to two state trial court orders

entered while his direct appeal was pending. (*See* exhibit to federal habeas petition, Vol. 2, April 20, 2009 "Notice of Appeal Motion For Enlargement Of Time.")[1]  The Second District Court of Appeal ultimately dismissed the appeal because Truesdale failed to comply with its directive to provide a copy of a final, appealable order. (Dkt. 16, Ex. 14.)

Truesdale then filed a "Petition For Writ Of Certiorari Petition For Writ Of Error Petition For Writ Of Error Coram Nobis" in the Florida Supreme Court, which initially treated this pleading as a petition for writ of mandamus. (Dkt. 16, Ex. 16; *See* exhibit to federal habeas petition, Vol. 1, April 12, 2010 petition.) The Florida Supreme Court transferred this petition to the state circuit court for consideration as a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Dkt. 16, Ex. 16; *see* exhibit to federal habeas petition, Vol. 1, September 24, 2010 Florida Supreme Court order transferring petition.) The state circuit court treated the motion as such and dismissed it without prejudice; Truesdale did not appeal the order of dismissal. (*See* exhibit to federal habeas petition, Vol. 1, October 7, 2010 "Order Dismissing Petition For Writ Of Mandamus Transferred From the Florida Supreme Court And Treated As A Motion For Postconviction Relief.")

Truesdale then filed a motion in the state circuit court seeking records and postconviction DNA testing. (Dkt. 16, Ex. 17.) The state court denied this motion. (Dkt. 16, Ex. 18.) Before that order was entered, Truesdale also filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Dkt. 16, Ex. 19.) The postconviction court denied this motion as well. (Dkt. 16, Ex. 20.) The state appellate court affirmed both orders of denial. (Dkt. 16, Exs. 23, 28.)

---

[1] Truesdale submitted three volumes of exhibits with his federal habeas petition. This document and others are contained within the exhibits.

Truesdale filed another petition in the state appellate court, which was denied. (Dkt. 16, Exs. 32, 33.)[2] The Florida Supreme Court dismissed Truesdale's appeal of the denial, finding it was without jurisdiction. (Dkt. 16, Ex. 34.) Truesdale filed his federal habeas petition on November 21, 2013.

## TIMELINESS OF TRUESDALE'S FEDERAL
## HABEAS PETITION UNDER 28 U.S.C. § 2244(d)

After careful consideration, the Court concludes that Truesdale's federal habeas petition is untimely. The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year period of limitation for filing a § 2254 federal habeas petition. This period runs from the later of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitation period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending. . . ." 28 U.S.C. § 2244(d)(2).

Truesdale's judgment and sentence were *per curiam* affirmed on direct appeal on December 5, 2008, and his motion for rehearing was denied on March 25, 2009. His conviction became final ninety days later, on June 23, 2009, upon the conclusion of the time to file a petition for writ of certiorari in the United States Supreme Court.[3] *Clay v.*

---

[2] Respondent did not include a copy of the petition in its appendix, and the petition does not appear to be included in the exhibits to Truesdale's habeas petition.

[3] Truesdale's subsequent petition for review in the Florida Supreme Court does not affect the date his conviction became final. The Florida Supreme Court does not have jurisdiction to review a state district court of appeal's *per curiam* affirmance on direct appeal. *See Jackson v. State*, 926 So.2d 1262, 1265 (Fla. 2006). In such circumstances, therefore, review in the Florida Supreme Court is not part of the direct review process. Accordingly, Truesdale's conviction became final when the 90-day period to file a petition for writ of certiorari expired.

*United States*, 537 U.S. 522, 527 (2003); *Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002).

Truesdale filed numerous motions, petitions, and appeals in the state courts. Before his judgment and sentence became final for AEDPA purposes, on April 20, 2009, Truesdale filed a notice of appeal that appears to have proceeded in the state appellate court under case number 2D09-2034. It appears that Truesdale sought review of orders entered by the state trial court rejecting his many *pro se* pleadings for records, documents, and similar requests that he filed in the state trial court. (*See* exhibit to federal habeas petition, Vol. 2, April 20, 2009 "Notice Of Appeal Motion For Enlargement Of Time" and state circuit court orders dated March 17, 2009, and April 7, 2009.) The state appellate court ultimately dismissed the proceeding in 2D09-2034 on September 16, 2009, due to Truesdale's failure to comply with its direction to provide the final, appealable order that was the subject of that appeal.

This appeal was not a "properly filed" application that tolled the AEDPA limitation period. An application is properly filed, thus tolling the AEDPA limitation period, "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (footnote omitted). The state appellate court made clear that this application did not comply with its filing requirements because Truesdale never identified the basis for the appeal. In other words, the state appellate court's jurisdiction was never invoked due to the manner in which this appeal was presented to the court.

Accordingly, Truesdale's AEDPA limitation period began running on June 24, 2009, the day after his judgment and sentence became final. Absent any tolling applications, he had one year to file his federal habeas petition. On April 12, 2010, Truesdale filed a "Petition For Writ Of Certiorari Petition For Writ Of Error Petition For Writ Of Error Coram Nobis" in the Florida Supreme Court. The Florida Supreme Court initially treated this pleading as a petition for writ of mandamus before transferring it to the state circuit court for consideration under Florida Rule of Criminal Procedure 3.850.

In accordance with this order, the state circuit court considered the pleading under Rule 3.850 and treated it as a postconviction motion under that Rule. The state circuit court dismissed the pleading due to Truesdale's failure to include a proper oath. Specifically, the pleading was dismissed "without prejudice to [Truesdale's] timely re-filing of a properly sworn motion." (*See* Exhibit to federal habeas petition, Vol. 1, October 7, 2010 "Order Dismissing Petition For Writ Of Mandamus Transferred From The Florida Supreme Court And Treated As A Motion For Postconviction Relief.")

A motion filed pursuant to Rule 3.850 must be under oath. Fla. R. Crim. P. 3.850(c). Because Truesdale's motion was dismissed for failure to include an oath, it was not "properly filed" so as to toll the AEDPA limitation period. *See Artuz*, 531 U.S. at 8; *Delguidice v. Florida Dep't of Corr.*, 351 Fed. App'x 425, 428 (11th Cir. 2009) ("[A] state post-conviction motion is not 'properly filed' under § 2244(d)(2) if it fails to comply with Florida's written oath requirement.") (citing *Hurley v. Moore,* 233 F.3d 1295, 1297 (11th Cir.

2000)).[4] Thus, Truesdale is not entitled to statutory tolling during the time this pleading was pending in state court. As he did not file any tolling motions before the one-year AEDPA filing deadline passed, his habeas petition filed on November 21, 2013, is untimely under § 2244(d)(1)(A).[5]

## EQUITABLE TOLLING

The one-year limitation period of § 2244(d) "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling is

---

[4] In addition, to the extent the Florida Supreme Court initially treated the petition as a petition for writ of mandamus and this may be considered separately from the ultimate consideration and disposition of the pleading under Rule 3.850, the petition was not a tolling application. A mandamus petition seeks to compel official action. This does not involve a "collateral review" of or attack the validity of a conviction. *See Tatum v. Sec'y, Dep't of Corr.*, 2011 WL 573838 at *5 (M.D. Fla. Feb. 15, 2011) ("[A] mandamus petition does not constitute an 'application for State post-conviction or other collateral review' within the meaning of § 2244(d)(2).").

[5] The Court recognizes that Truesdale's appeal in case number 2D09-2034 and his April 12, 2010 petition were atypical. Even generously construing these pleadings and treating them as tolling applications, Truesdale's federal habeas petition would still be untimely under § 2244(d)(1)(A).
Truesdale's appeal filed in the Second District Court of Appeal in case number 2D09-2034 was dismissed on September 16, 2009. The Court notes that Truesdale's April 12, 2010 petition filed in the Florida Supreme Court referenced case number 2D09-2034. For the sake of this analysis, the Court will consider this matter to have been pending until the resolution of the April 12, 2010 petition in the state circuit court. There, it was dismissed in an order signed October 7, 2010, and docketed on October 12, 2010. The state circuit court docket has an October 28, 2010 entry reading "copy: notice of appeal for Supreme Ct.," but it is apparent that the court did not accept this as a notice of appeal, and no appeal was taken. (Dkt. 16, Ex. 36.)
Therefore, the Court will assume the AEDPA limitation period began to run on November 12, 2010, after the 30-day period for filing an appeal expired. Truesdale's January 21, 2011 motion for records and postconviction DNA testing was not a tolling application. A motion for postconviction DNA testing under Rule 3.853 has no tolling effect because "a Rule 3.853 proceeding involves an application for discovery only, pursuant to which the court lacks authority to order relief from the movant's sentence or conviction based on the DNA test results." *Brown v. Sec'y, Dep't of Corr.*, 530 F.3d 1335, 1337 (11th Cir. 2008). It is "well-settled that a discovery motion does not" toll the AEDPA limitation period. *Id.* at 1338. Similarly, to the extent Truesdale's January 21, 2011 motion sought the production of records, the state court treated it as a petition for writ of mandamus. This was not a "collateral review" of the conviction; rather, as with Truesdale's request for DNA testing, it amounted to a discovery motion.
Therefore, the limitation period ran for 154 days before Truesdale filed his Rule 3.850 postconviction motion on April 14, 2011. It began to run again on July 20, 2012, after the state appellate court issued its mandate affirming the denial of this motion. Another 28 days, for a total of 182 days, passed before Truesdale filed another petition in the state appellate court on August 16, 2012. This petition remained pending until the state appellate court denied it on November 20, 2012. Thereafter, Truesdale had 183 days, or until May 22, 2013, to file his federal habeas petition. The state court record reflects no other motions were filed before this date. (Dkt. 16, Ex. 36.) Therefore, Truesdale filed no additional tolling applications to pause the AEDPA limitation period, and it expired before he filed his federal habeas petition on November 21, 2013.

appropriate when a petitioner demonstrates "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Equitable tolling "is an extraordinary remedy 'limited to rare and exceptional circumstances and typically applied sparingly.'" *Cadet v. Fla. Dep't of Corr.*, 742 F.3d 473, 477 (11th Cir. 2014) (quoting *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009)). The petitioner bears the burden of establishing the applicability of equitable tolling by making specific allegations. *Cole v. Warden, Georgia State Prison*, 768 F.3d 1150, 1158 (11th Cir. 2014).

"The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal citation and quotation marks omitted). Determining whether a circumstance is extraordinary "depends not on 'how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" *Cole*, 768 F.3d at 1158 (quoting *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)). A petitioner must "show a causal connection between the alleged extraordinary circumstances and the late filing of the petition." *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011).

In his reply, Truesdale asserts that equitable tolling applies because of alleged unprofessional conduct of attorney David Ranck, whom he states his family hired for purposes of postconviction proceedings. Truesdale claims that "Mr. Ranck's letters shows he was hired to filed an (Fla. Rule Crim. Proc. 3.850) ineffective assistance of trial counsel, and Truesdale requested Mr. Ranck to also filed an (Fla. Rule App. Proc. 9.141) state

habeas on ineffective assistance of appellate counselors." (Dkt. 17, p. 9.) He reiterates this assertion on page 10 of the reply, where he also states that "any one of these procedures motions would have . . . Tolled . . . the 28 U.S.C. 2244 one-year statute under . . . (AEDPA)." (Dkt. 17, p. 10) Truesdale also states that Ranck and his firm "were at least Truesdale's agents for purpose of advising Truesdale of the impending deadline." (Dkt. 17, p. 9.) But, he claims, Ranck "detached himself from any trust relationship with Truesdale his client." (Dkt. 17, p. 11.)

The Court interprets Truesdale's claim as one alleging attorney negligence. When a petitioner alleges that equitable tolling applies because of his attorney's negligence, the petitioner must show that his attorney abandoned the attorney-client relationship in order to establish an extraordinary circumstance. "[A]ttorney negligence, however gross or egregious, does not qualify as an 'extraordinary circumstance' for purposes of equitable tolling; abandonment of the attorney-client relationship . . . is required." *Cadet*, 742 F.3d at 481. *See also Thomas v. Attorney General, Florida*, 795 F.3d 1286, 1293 (11th Cir. 2015) ("[A]n abandonment analysis is required when evaluating a claim to equitable tolling based solely on attorney negligence, whether simple or gross. . . . [T]he question is whether the attorney, through her conduct, effectively abandoned the client.").[6]

Truesdale does not clearly argue or establish that counsel abandoned the attorney-client relationship, as he must to establish equitable tolling. "The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on

---

[6] Additionally, Truesdale does not assert or establish that counsel's conduct involved circumstances aside from negligence, such as bad faith, dishonesty, divided loyalty, or impairment, that "may still form the basis of an equitable tolling argument." *Thomas*, 795 F.3d at 1294 (11th Cir. 2015).

the petitioner." *San Martin*, 633 F.3d at 1268 (citing *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002)). Furthermore, "[m]ere conclusory allegations are insufficient to raise the issue of equitable tolling." *Id.* (citing *Drew*, 297 F.3d at 1292-93; *Pugh v. Smith*, 465 F.3d 1295, 1300-01 (11th Cir. 2006); *Helton v. Sec'y for the Dep't of Corr.*, 259 F.3d 1310, 1314 (11th Cir. 2001) (per curiam)). Abandonment "denotes absolute renunciation or withdrawal, or a complete rejection or desertion of one's responsibilities, a walking away from a relationship." *Cadet*, 742 F.3d at 484.

Truesdale refers only to "letters" from counsel. A review of the exhibits to his federal habeas petition reveals numerous letters from Ranck to Truesdale attached to a copy of the state court's July 21, 2011 order denying Truesdale's requests for records and postconviction DNA testing. All but one of the letters were written before Truesdale filed his *pro se* Rule 3.850 motion on April 14, 2011. One letter is undated but Truesdale states that it was received on October 28, 2009; the other letters are dated October 30, 2009, December 28, 2009, March 18, 2010, and March 31, 2010. (*See* exhibit to federal habeas petition, Vol. 2, letters from David Ranck to William Truesdale.) These letters indicate Ranck was at one time retained with respect to Rule 3.850 postconviction proceedings.[7] In addition, Truesdale's exhibits include another letter from Ranck dated March 26, 2012, after Truesdale filed his *pro se* Rule 3.850 motion. In this letter, Ranck informed Truesdale that some type of mail was received in Ranck's office and was being forwarded to him.

---

[7] Ranck's letter of March 18, 2010 indicates that at least at that time, he was not retained to file a state habeas petition under Florida Rule of Appellate Procedure 9.141; referencing a phone call between the two, Ranck wrote, "You also asked me to represent you separately to research an ineffective assistance of counsel motion against your appellant [sic] counsel. I advised that that would be a separate representation that I had not been hired for and that your family would have to make that decision financially." (*See* exhibit to habeas petition, Vol. 2, March 18, 2010 Letter From David Ranck to William Truesdale.)

(*See* exhibit to federal habeas petition, Vol. 2, March 26, 2012 letter from David Ranck to William Truesdale.)

Counsel's letters written in 2009 and 2010 indicate that counsel was communicating with Truesdale and planned further communication with him. In particular, counsel's letter of March 18, 2010 memorializes a recent conversation between counsel and Truesdale and references a future meeting. This letter also reflects that counsel was working on reviewing Truesdale's trial transcript and wanted to assess the entire transcript with Truesdale so Truesdale could share his concerns about trial counsel's performance.[8]

Truesdale ultimately filed his Rule 3.850 motion *pro se* in the state circuit court on April 14, 2011. The last letter from counsel prior to this date that is included in Truesdale's federal habeas exhibits is dated March 31, 2010. Truesdale provides no time line or other specific information with respect to his representation by Ranck after this date, and alleges no facts that could support a finding of abandonment. Truesdale makes no allegation that after March 31, 2010, for instance, counsel simply stopped communicating with him, that he attempted to communicate with counsel but counsel did not respond or refused to speak with or write to him, that counsel ceased communications with Truesdale's family, or that counsel made any assurances he would or in fact did file a postconviction motion but failed to do so.

This is in contrast to the facts of *Maples v. Thomas*, __ U.S. __, 132 S.Ct. 912 (2012), where attorney abandonment was found in the context of establishing cause to

---

[8] Referring to conversation between Ranck and Truesdale, the letter states, "We agreed that the next time we talk we would go over the transcript together and systematically so that you can point out to me any areas where you feel [trial counsel] was ineffective in representing you." (*See* exhibit to habeas petition, Vol. 2, March 18, 2010 Letter From David Ranck to William Truesdale.)

overcome a procedural default when Maples's attorneys did not notify Maples they were no longer representing him, did not move to withdraw from representation, and made no provisions for substitute counsel. It is also distinguishable from the facts of *Holland*, 560 U.S. 631, in which Holland's attorney failed to communicate with Holland over a period of years, did not inform Holland that the Florida Supreme Court had decided his case, and failed to file a timely federal habeas petition. *See Cadet*, 742 F.3d at 480 (noting that *Maples* "characterized *Holland* as a case of attorney abandonment.").

In the absence of any allegation or evidence that counsel abandoned the attorney-client relationship, Truesdale's conclusory allegations about counsel's performance do not show that his attorney's conduct amounts to an extraordinary circumstance warranting equitable tolling.[9]

Moreover, to be entitled to equitable tolling, Truesdale must show that he was diligently pursuing timely filing of his federal habeas petition before the expiration of the limitation period. Even if Truesdale could show abandonment by counsel constituting an extraordinary circumstance, he fails to argue or establish diligence. He states that, "Truesdale did used ('Diligence') in filing motions for the records and Kokal, also (TOLLED) Truesdale case . . ." (Dkt. 17, p. 20.)

Despite his generalized reference to diligence, Truesdale does not assert or

---

[9] In his reply, Truesdale also references ineffective assistance of postconviction counsel and appellate counsel, and also references *Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309 (2012). However, *Martinez* applies when a habeas petitioner seeks to overcome the procedural default of a claim of ineffective assistance of trial counsel that was not raised in an initial-review collateral proceeding by asserting that the petitioner had no counsel in that proceeding or counsel was ineffective. *Id.* "[T]he reasoning of the *Martinez* rule does not apply to AEDPA's limitation period in § 2254 cases or any potential tolling of that period." *Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014). Truesdale establishes no basis to apply equitable tolling pursuant to *Martinez*.

demonstrate that he made any effort or took any steps to ensure timely filing of his federal habeas petition prior to the expiration of the one-year AEDPA window either on his own or through the attorney hired for postconviction purposes. *See Helton v. Sec'y, Dep't of Corr.*, 259 F.3d 1310, 1313-14 (11th Cir. 2001) ( equitable tolling was not warranted when inmate failed to state any independent efforts to ascertain time deadline); *Diaz v. Sec'y, Dep't of Corr.*, 362 F.3d 698, 702 (11th Cir. 2004) (unexplained 532-day delay in filing habeas petition in itself constituted a lack of diligence). *See also Holland*, 560 U.S. at 652-53 (finding of a lack of diligence was incorrect when petitioner sent many letters to counsel seeking information, contacted courts and the Florida Bar seeking removal of attorney who failed to timely file federal habeas petition, and prepared a *pro se* federal habeas petition the day he realized the AEDPA limitation period had passed due to counsel's failures).

Truesdale fails to show that he exercised diligence with respect to timely filing his federal habeas petition.  As Truesdale shows neither extraordinary circumstances nor the exercise of diligence, equitable tolling is not available to allow review of his untimely federal habeas petition.

### ACTUAL INNOCENCE

Finally, Truesdale asserts in the reply that he is actually innocent of murder in the second degree and that a failure to review the merits of his petition will result in a fundamental miscarriage of justice.  A showing of actual innocence may permit the consideration of a time-barred habeas petition. *See McQuiggin v. Perkins*, __ U.S. __, 133 S.Ct. 1924, 1928 (2013) ("We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations."). To prove his innocence, Truesdale must present

"new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Such evidence must show "that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt. . ." *House v. Bell*, 547 U.S. 518, 538 (2006).   As Truesdale points to no evidence in support of his actual innocence claim, he fails to present any "new reliable evidence" that was not presented at trial and that establishes his innocence.  Consequently, his habeas petition must be dismissed as time-barred.

It is therefore **ORDERED** that Truesdale's habeas petition (Dkt. 1) is **DISMISSED**, as time-barred.  The Clerk is directed to enter judgment against Truesdale and to close this case.

It is further **ORDERED** that Truesdale is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). Id. "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To merit a COA, Truesdale must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because the petition is clearly time-barred, Truesdale cannot satisfy the second prong of the *Slack* test. 529 U.S. at 484. Finally, because Truesdale is not entitled to a certificate of appealability, he is not entitled to appeal *in forma*

*pauperis*.

      **DONE AND ORDERED** in Tampa, Florida, on December 29, 2015.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

<u>Copy to</u>:

William James Truesdale
Counsel of Record